IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RNC SYSTEMS, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 15-5239 (JBS/KMW) |
| MTG HOLDINGS, LLC, SUMMARY HOLDINGS, LLC, and IRIC COHEN. | **OPINION** |
| Defendants. | |

APPEARANCES:

Dean E. Weisgold, Esq.
1835 Market Street
Suite 1215
Philadelphia, PA 19103
    Attorney for Plaintiff

Trevor S. Williams, Esq.
73 Ellis Street
Haddonfield, NJ 08033
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

# I.    INTRODUCTION

In 2014, Plaintiff RNC Systems, Inc. ("RNC") won a judgment against Modern Technologies Group, Inc. ("MTG"), in a suit before this Court arising from a failed business relationship between the two companies. To date, RNC has been unable to collect any part of that judgment. RNC instituted this suit the following year against MTG Holdings, LLC ("MTG LLC"), Summary

Holdings, LLC ("Summary"), and Iric Cohen, asserting that MTG, MTG LLC, and Summary were alter egos of one another and of Mr. Cohen, and that Defendants in this case should be liable for RNC's judgment against MTG from the prior lawsuit. This case now comes before the Court on Defendants' motion for summary judgment and motion to strike Plaintiff's opposition to this motion, and Plaintiff's motion to amend the complaint to add Modern Technologies Group, Inc. as a defendant. [Docket Items 72, 84 & 95.] For the reasons that follow, the Court will deny the motion to strike, grant the motion to amend, and deny the motion for summary judgment.

## II.  BACKGROUND

### A. Factual Background[1]

The Parties

RNC is a Nevada corporation with its principal place of business in California. (Findings of Fact and Conclusions of Law ("FFCL") dated December 31, 2014, RNC Systems, Inc. v. Modern Technologies Group, Inc., Case No. 08-1036 (JBS/KMW), at 9.) RNC developed a particular product, the Limo Touch, for use in limousines. (Id. at 8-9.)

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff RNC, as the party opposing summary judgment.

MTG was a New Jersey limited liability company with its
principal place of business in Medford, New Jersey. (Id. at 8-
9.) MTG was also in the limousine business. It ceased business
operations in March 2014 and avers that it holds only "shelving,
old inventory (unsellable)" as remaining assets and that its
principals have no interest in any other businesses. (MTG
Responses to Information Subpoena Served on February 22, 2015
(Ex. 3 to Declaration of Dean E. Weisgold ("Weisgold Decl.")
[Docket Item 79-1]) at ¶¶ 6, 7, 15.) According to New Jersey
Business Entity Information records, MTG's status as a New
Jersey Profit Corporation was revoked and reinstated numerous
times for failing to file an annual report for two consecutive
years. (Ex. 21 to Weisgold Decl.) Eric Alpert, Iric Cohen's
brother in law, was the President of MTG until September 8,
2012, and Sharon Ronchetti was an executive vice president of
MTG in charge of financials until June of 2013. (Deposition of
Eric Alpert (Ex. B to Def. SMF) at 4:15-20, Ronchetti Dep. at
4:10-5:2.) Mr. Cohen was the CEO of the company. (Deposition of
Iric Cohen (Ex. A to Defendants' Statement of Material Facts) at
9:20-22.) No tax returns have been produced after 2011 in this
action.

MTG LLC is a New Jersey limited liability company with its
principal place of business in Medford, New Jersey. (Complaint
[Docket Item 1] at ¶ 2.) MTG LLC's status as a New Jersey LLC

was revoked on April 16, 2015 for failing to file an annual report for two consecutive years. (New Jersey Business Entity Information Dated August 5, 2016 (Ex. 20 to Weisgold Decl.).) No tax returns for MTG LLC have been produced for any time period in this action.

Summary was a short-lived New Jersey limited liability company with its principal place of business in Medford, New Jersey. (Compl. at ¶ 3.) The company was created in order to continue the business of MTG when the former company experienced financial difficulties. (Certification of Iric Cohen (Ex. F to Def. SMF) at ¶¶ 14-158.) It was terminated or dissolved in 2014. (New Jersey Business Entity Information Dated June 29, 2015 (Ex. 13 to Weisgold Decl.); Cohen Dep. at 17:7-12.) No tax returns for Summary have been produced for any time period in this action. According to Defendants' accountant, all three companies have filed separate state and federal tax returns and have maintained separate funds. (Certification of Albert Van Sciver, CPA (Ex. 27 to Weisgold Decl.) at ¶¶ 4-5.)

Mr. Cohen is the sole owner, officer, and director of MTG. (Ex. 3 to Weisgold Decl.) He is also a principal of Summary (Ex. 13 to Weisgold Decl.) and MTG LLC. (Ex. 20 to Weisgold Decl.) A Statement of Financial Condition for Mr. Cohen from December 31, 2013 prepared by certified public accountants notes that, at that time, Mr. Cohen owned 100% of the common stock of MTG and

50% of the common stock of Summary, and that MTG was an asset
with no value and Summary was an asset worth $2,000,000.
(Statement of Financial Condition (Ex. 11 to Weisgold Decl.) at
p. 2 of 5.) The parties dispute how involved Mr. Cohen was with
the operations of MTG during the time RNC and MTG had a business
relationship and whether representatives from RNC had any
interactions with him before September 2012, when Mr. Alpert
left MTG. (Compare Cohen Dep. at 9:14-23 (Mr. Cohen was an
absentee owner) with Deposition of Sharon Ronchetti (Ex. C to
Def. SMF) at 6:9-21 (Mr. Cohen became involved in day-to-day
operations in September 2012) and Declaration of Iric Cohen (Ex.
F to Def. SMF) at ¶¶ 11-13 (same); see also Def. SMF ¶¶ 19-22.)
Mr. Cohen would withdraw money from MTG's bank accounts for
"personal reasons" (Alpert Dep. at 15-15-20; see also Ronchetti
Dep. at 13:21-14:17) and he told employees that "he was the one
who owned everything around here." (Ronchetti Dep. at 7:15-25.)

MTG LLC owns property located at 3 Reeves Station Road,
Medford, New Jersey; this same address is listed as the
permanent address of Summary and the only business location for
MTG. (Deed (Ex. 4 to Weisgold Decl.); Ex. 13 to Weisgold Dep.;
Ex. 3 to Weisgold Dep.) MTG LLC entered into three mortgages on
the Property and has paid off two of them. (Mortgage dated July
2, 2003 (Ex. 16 to Weisgold Decl.); Mortgage dated February 4,
2008 (Ex. 17 to Weisgold Decl.); Mortgage dated May 16, 2014

(Ex. 18 to Weisgold Decl.); Discharge of Mortgage (Ex. 19 to Weisgold Decl.) However, the Statement of Financial Condition of Mr. Cohen lists the Property as owned 100% by Mr. Cohen, and he referred throughout his deposition to the Property as his. (Ex. 11 to Weisgold Decl. at p. 4 of 5; Cohen Dep. at 24:14-16.) MTG owns no real property, although it sold some property "about three years ago," or in around 2012. (Cohen Dep. at 45:22-46:20.)

The RNC-MTG Business Relationship

RNC and MTG entered into a written Licensing Agreement dated December 6, 2003, by which MTG was to pay RNC licensing fees for the use of two different products to be used in the limousine industry. (FFCL at 1.)  MTG stopped paying any royalties to RNC after October 1, 2008, but continued to sell at least one of the licensed products covered by the Licensing Agreement after that date, at least until December, 2013. (Id. at 7, 12, 24.) The parties now dispute when the business relationship between RNC and MTG ended: whether it was when MTG stopped paying royalties due under the Licensing Agreement, or whether it continued as Mr. Cohen continued to use RNC-licensed technology. (Compare Def. SMF ¶¶ 10, 21 with Pl. SMF ¶¶ 10, 21.)

RNC filed suit against MTG in February 2008, seeking a declaration that MTG had breached the Licensing Agreement by failing to discharge its obligations, and that the Licensing

Agreement was terminated; MTG filed counter-claims sounding in breach of contract, fraud in the inducement, commercial disparagement, and unfair competition. (Id. at 3.) Over six years later, the case ("the Judgment lawsuit") finally proceeded to a bench trial before this Court, on the parties' breach of contract claims only. (Id.) The Court ultimately ordered and adjudged that RNC prevailed on both its claim for breach of contract and MTG's counterclaim for breach of contract, and entered a Judgment in favor of RNC and against MTG in the amount of $265,463.18. (Id. at 42.) The Judgment remains unsatisfied.

Post-Judgment Discovery

Following entry of the Judgment against MTG and in favor of RNC, RNC engaged in discovery in aid of execution in the early months of 2015, including serving an Information Subpoena on February 22, 2015 (Ex. 3 to Weisgold Decl.) and deposing Mr. Cohen as a corporate designee of MTG in June of 2015. (Cohen Dep. (Ex. A to Def. SMF).) This lawsuit, seeking to hold Mr. Cohen, MTG LLC, and Summary liable for the Judgment, followed on July 6, 2015. [Docket Item 1.] RNC's six-count Complaint asserted claims for injunctive relief, piercing the corporate veil, breach of fiduciary duty, accounting, conspiracy, and fraudulent transfer.[2]

---

[2] RNC withdrew its claims for a temporary restraining order and preliminary injunction by letter earlier in the case [Docket

RNC apparently became aware that MTG had ceased operations only on account of MTG's responses to the Information Subpoena. (Ex. 3 to Weisgold Decl.; Pl. Counterstatement of Material Facts ¶ 23.) The parties offer differing accounts of when and why MTG became insolvent, what became of MTG's assets during the wind down, and why certain deposits were made to Mr. Cohen's account in 2014 and 2015. Essentially, Defendants assert that MTG stopped being profitable in 2008, became insolvent in 2012, and and went out of business in early 2014 because of the economic downturn. (Def. SMF ¶¶ 23, 24, 27, 28.) According to Defendants, Infinite Innovations, Inc. and Mastrcon issued checks to MTG for $50,000 and $9,995, respectively, for MTG's inventory and equipment in 2014 and 2015, but that those checks had to be deposited to MTG LLC or Mr. Cohen's bank accounts because MTG no longer held its own accounts. (Id. ¶¶ 32-34.)

RNC offers a different version of events, relying largely on bank transfers between accounts held by Mr. Cohen, Summary, and MTG. (Pl. Response to Def. SMF ¶ 23; Bank Statements (Ex. 22, 24, 27, 33, 48, 57 to Weisgold Decl.) RNC asserts that MTG's bank statements, showing activity in 2014 and 2015, prove that the company was solvent past 2012 and that it may have failed

---

Items 55 & 56], and its breach of fiduciary duty and conspiracy at the February 15, 2017 argument. None of these claims appear in the now-operative Amended Complaint, discussed below.

because of excessive payments made to Mr. Cohen. According to RNC, because Defendants have failed to produce full financial records for MTG and MTG LLC, despite an Order from Judge Williams to do so [Docket Item 19], there are factual questions as to whether payments due to MTG were improperly diverted to Mr. Cohen or another of his companies.

**B. Parties' Arguments**

Defendants principally seek summary judgment on the grounds that RNC cannot pierce the corporate veil of MTG because MTG has not been named as a defendant in this lawsuit. Defendants also take the position that none of the factors relevant to finding that a corporation was a sham or fraud were present when the corporation was formed, or during the time RNC and MTG had a business relationship. Additionally, Defendants assert that RNC's fraudulent transfer claim must be dismissed because RNC would need to bring that claim on behalf of all of MTG's creditors and that RNC's claims for an injunction and an accounting have been mooted by this case.

RNC asserts that summary judgment is not warranted on its piercing the corporate veil and fraudulent transfer claims because there is evidence in the record to support such claims. In particular, RNC takes the position that piercing the corporate veil is appropriate in this case because all of Mr. Cohen's companies – MTG, Summary, and MTG LLC – failed to

observe corporate formalities or keep corporate records, and that Mr. Cohen improperly transferred or commingled assets between the companies. RNC additionally argues that its fraudulent transfer claim need not be brought on behalf of all creditors and that factual issues on that claim preclude the entry of summary judgment.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable

inferences.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  <u>Halsey</u>, 750 F.3d at 287 (quoting <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing <u>Anderson</u>, 477 U.S. at 255).

## IV.  DISCUSSION

### A. Defendants' Motion to Strike

As a preliminary matter, the Court will address Defendants' motion to strike RNC's Response Statement to their motion for summary judgment. [Docket Item 84.] According to Defendants, RNC's factual submission runs afoul of L. Civ. R. 56.1 because "it contains a counter statement of material facts supposedly *not in dispute* and because its responsive paragraphs include legal arguments and conclusions of law."

The Court disagrees. The Local Civil Rules provide the opponent to a motion for summary judgment the opportunity to "furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition." L. Civ. R. 56.1(a). RNC has plainly taken advantage of this provision of

the Local Rules, and Defendants' description of the supplement
as "a counter statement of undisputed facts" is a
mischaracterization. RNC's submission, labeled a
"Counterstatement of Material Facts," provides the Court with a
properly formatted and supported alternative to Defendants'
version of the facts. This is, by definition, a recounting of
disputed material facts. Furthermore, to the extent that both
parties' factual submissions contain a few errant legal
arguments and conclusions of law, the Court will disregard such
points without taking the drastic step of striking any portion
of the papers before this Court. Accordingly, Defendants' motion
to strike is denied.

**B. Piercing the Corporate Veil**

The gravamen of RNC's Complaint is that it should be
permitted to pierce MTG's corporate veil and recover the
Judgment from Mr. Cohen, MTG LLC, and Summary. Piercing the
corporate veil, also known as "alter ego liability," is "a
remedy that is involved when [a subservient] corporation is
acting as an alter ego of [a dominant corporation.]" Bd. of
Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,
296 F.3d 164, 171 (3d Cir. 2002) (internal quotations and
citation omitted). By piercing the corporate veil, a court "may
impose liability on an individual or entity normally subject to
the limited liability protections of the corporate form." The

12

Mall at IV Group Props., LLC v. Roberts, No. 02-4692, 2005 WL
3338369, at *3 (D.N.J. Dec. 8, 2005). The New Jersey Supreme
Court has noted that the purpose of the doctrine is "to prevent
an independent corporation from being used to defeat the ends of
justice, to perpetuate fraud, to accomplish a crime, or
otherwise to evade the law." State v. Ventron Corp., 468 A.2d
150, 164 (N.J. 1983).

For the principle to apply under New Jersey law, "a
plaintiff must show that: (1) one corporation is organized and
operated as to make it a mere instrumentality of another
corporation, and (2) the dominant corporation is using the
subservient corporation to perpetrate fraud, to accomplish
injustice, or to circumvent the law." Foodtown, Inc., 296 F.3d
at 171 (citing Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d
145, 149 (3d Cir. 1988)); see also Holzli v. DeLuca Enterprises,
No. 11-6148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012)
(Simandle, J.) (piercing the corporate veil requires "such unity
of interest and ownership that the separate personalities of the
corporation and the individual no longer exist.") In other
words, "[a]n individual may be liable for corporate obligations
if he was using the corporation as his alter ego and abusing the
corporate form in order to advance his personal interests." Sean
Wood, LLC v. Hegarty Grp., Inc., 29 A.3d 1066, 1076 (N.J. App.
Div. 2011) (emphasis added).

13

In determining whether to pierce the corporate veil, common ownership and common management alone will not automatically give rise to common liability. Stochastic Decisions, Inc v. DiDomenico, 565 A.2d 1133, 1136 (N.J. App. Div. 1989). Rather, to find whether a defendant abused the corporate structure, New Jersey courts consider factors such as

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

Craig, 843 F.2d at 150 (quoting American Bell, Inc. v. Federation of Telephone Workers, 736 F.2d 879, 886 (3d Cir. 1984)). Even where a plaintiff can establish alter ego identity under the first prong of New Jersey's corporate piercing analysis, liability may only be imposed where the defendant used the other company to "perpetrate a fraud or injustice, or otherwise to circumvent the law." Ventron, 468 A.2d at 164. This means that "there must be some 'wrong' beyond simply a judgment creditor's inability to collect." The Mall at IV Grp. Props., LLC v. Roberts, Case No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005).

Defendants seek summary judgment on RNC's alter ego count principally on the ground that, because MTG is not a party to

this suit, RNC may not pierce its corporate veil. Defendants
offer no legal support for this argument, and indeed, there is
none. A judgment creditor need not name the dominant corporation
in a veil-piercing suit in order to recover against its
subsidiaries or principals. See Cevdet Aksut Ve Ogullari Koll.
Sti v. Cavusoglu, Case No. 12-2899, 2015 WL 4315330 (D.N.J. July
14, 2015) (Plaintiff named only the sole director and
shareholder of a dissolved corporation in a suit to pierce the
corporate veil and hold individual liable for judgment obtained
against the dissolved corporation); AYR Composition, Inc. v.
Rosenberg, 619 A.2d 592 (N.J. App. Div. 1993) (Judgment
creditor-plaintiff named individual officers as defendants in
suit to pierce the corporate veil and recover a judgment awarded
against their former corporation in a separate lawsuit).
Defendants are not entitled to summary judgment on this
technicality alone. The Court has found no New Jersey precedent
holding that a plaintiff must name the dominant corporation in
order to pierce the corporate veil, and in any event, the Court
will permit Plaintiff to amend the Complaint to name MTG as a
defendant.[3]

---

[3] Shortly after the February 15 oral argument, Plaintiff
submitted a proposed Motion to Amend the Complaint, which this
Court permitted to be filed beyond the motion deadline. [Docket
Item 95.] By its motion to amend, Plaintiff seeks to add MTG as
a Defendant in this case; the proposed Amended Complaint
includes no other new allegations. Under Rule 15(a), "the court

In the alternative, Defendants argue that summary judgment is proper because RNC has adduced no evidence that piercing the corporate veil would be proper under any of the <u>Craig</u> factors. Defendants would have the Court limit the record to the time in

---

should freely give leave" to amend the complaint "when justice so requires." However, a court may deny leave to amend where it is apparent from the record "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." <u>United States ex rel. Schumann v. Astrazeneca Pharmaceuticals L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014) (citing <u>Lake v. Arnold</u>, 232 F.3d 360, 373 (3d Cir. 2000)). "[P]rejudice to the non-moving party is the touchstone for the denial of a motion to amend." <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993).

Here, Defendants demonstrate none of these factors in their opposition to Plaintiff's motion to amend. Defendants did not raise the possibility that MTG is an indispensable party until their motion for summary judgment, and even then, Plaintiff had a good faith, reasonable basis in law for arguing that MTG need not be named as a defendant in the piercing claim rather than immediately moving to amend the complaint to correct the purported deficiency. Nor would this amendment be futile: as follows, there are factual disputes about whether the criteria for piercing the corporate veil exist in this case. And finally, the Court does not find that adding MTG at this stage would result in prejudice to Defendants. MTG's sole shareholder and officer, Mr. Cohen, has actively participated in all aspects of this case. Plaintiff already took post-judgment discovery from MTG and Mr. Cohen, by which it learned that Mr. Cohen is the <u>only</u> shareholder and officer who might have discoverable material relating to the 2012-2015 time period. It is hard to imagine what more information RNC could need from MTG to prepare for trial that it does not already have in its possession. The Court finds distinguishable the cases Defendants point to where courts denied a motion to amend to add new <u>claims</u> late in the game, where here, Plaintiff seeks only to add a related <u>corporate party</u> who has essentially already participated in this case. In the absence of undue delay, futility, or prejudice to Defendants, the Court will grant Plaintiff's motion to amend the complaint and add MTG as a defendant in this action.

which RNC and MTG had a formal business relationship, or up through 2008; this position ignores the essence of RNC's allegations, that Mr. Cohen moved MTG assets to himself and other of his companies to avoid paying the judgment that was forthcoming against MTG once summary judgment was granted in the Judgment Lawsuit in 2012. After all, impermissible personal payments to an owner is "the classic criteria for piercing the corporate veil." DiDomenico, 565 A.2d at 1136.

RNC points to facts in the record sufficient to create factual issues about, at least, whether Mr. Cohen's companies observed corporate formalities and maintained corporate records; MTG's undercapitalization and insolvency; and whether the dominant stockholder siphoned funds. Craig, 843 F.2d at 150. Because at this juncture there are factual disputes about Mr. Cohen's involvement in MTG; whether MTG, MTG LLC, and Summary commingled funds; when and why MTG became insolvent; how much money Mr. Cohen withdrew from his companies' bank accounts, when, and why; and whether certain payments due to MTG were ultimately made to Mr. Cohen or other of his companies instead, the Court cannot grant Defendants' motion for summary judgment.

**C. Fraudulent Transfer**

Defendants also seek summary judgment on Count VI of the Complaint on the grounds that fraudulent transfer claims must be brought on behalf of all creditors to be viable. The crux of

17

RNC's claims in this count is that MTG made improper transfers of funds to Mr. Cohen, Summary, and MTG LLC when it was insolvent or in the zone of insolvency in 2014 and 2015, thereby harming MTG's creditors, including RNC. (See Compl. ¶¶ 51-58, 70-72.)

Defendants assert, for the first time, that RNC's fraudulent transfer claim on its sole behalf is foreclosed by New Jersey law, pointing to a passage from the Superior Court, Appellate Division of New Jersey:

> When a corporation becomes insolvent a quasi-trust relationship arises between its officers and directors on the one hand and its creditors on the other. . . . An action to set aside or recover such preferences, if brought by a single creditor instead of by a receiver or trustee in bankruptcy of the corporation, must be brought for the benefit of all creditors of the corporation. . . . The creditor may not, as plaintiff here has done, bring in action at law to recover from the beneficiaries of the preferential payments only the amount due on the judgment which the creditor has recovered against the corporation.

Portage Insulated Pipe Co. v. Costanzo, 275 A.2d 452, 453 (N.J. App. Div. 1971).

First, it is clear that there is no such requirement in the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq. ("NJUFTA") itself. Nowhere does the statute mandate that a singular plaintiff is barred from seeking to set aside a fraudulent transaction on its own behalf. Second, the cases Defendants point to applying this principle all consider breach

18

of fiduciary duty claims, and not fraudulent transfer claims
under the NJUFTA. The undersigned is not the only court to find
this distinction important: on the same day, in two very closely
related cases involving a single plaintiff, Judge Martini
simultaneously granted summary judgment on a breach of fiduciary
duty claim, citing Portage, while permitting an NJUFTA claim to
move forward. Compare Cevdet Aksut Ve Ogullari Koll. Sti v.
Cavusoglu, Civil No. 12-2899, 2015 WL 4315330, at *8 (D.N.J.
July 14, 2015) with Cevdet Aksut Ve Ogullari Koll. Sti v.
Cavusoglu, Civil No. 14-3362, 2015 WL 4317750, at *6-*7 (D.N.J.
July 15, 2015). And finally, even if a fraudulent transfer claim
must be brought on behalf of all creditors, the fact that RNC is
the sole plaintiff in this case means this requirement would
make little practical difference: as a judgment creditor, RNC
would have priority in recovering its losses over other
creditors, and all parties agreed at the February 15 argument
that RNC is the only known judgment creditor. No other creditors
would be meaningfully harmed if a superior creditor's claim was
paid out ahead of their own.

Turning to the substance of RNC's claim, factual disputes
preclude this Court from granting Defendants' motion for summary
judgment on Plaintiff's fraudulent transfer claim. The NJUFTA
provides, inter alia, that

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.J.S.A. 25:2-27(a). A factfinder could determine, on the record before the Court, that RNC's creditor claim against MTG arose in 2008 (and possibly continued to build through at least 2013) when MTG failed to pay royalties due under the Licensing Agreement between the companies; that MTG became insolvent at some point between the end of 2012 (Def. SMF ¶ 24) and the trial in the Judgment lawsuit in March of 2014 (Ex. 3 to Weisgold Decl. at Response ¶ 15); that a number of four- and five-figure transfers were made from MTG's account in the days leading up to MTG's cessation of business (Ex. 24 to Weisgold Decl.); and that at least the payments from Infinite Innovations, Inc. and Mastrcon due to MTG were instead deposited by Mr. Cohen or another of his companies instead of MTG. (Ex. 10 to Weisgold Decl.; Ex. 23 to Weisgold Decl.) Especially important to RNC's case is the fact that the transferees were alter egos of Mr. Cohen, and that insider transactions are singled out for special scrutiny under the NJUFTA. See N.J.S.A. 25:2-27(b). Accordingly, Defendants' motion for summary judgment is denied as to the fraudulent transfer count.

**D. Injunction and Accounting**

Summary judgment will be denied on the remaining counts of the Complaint, seeking permanent injunctive relief and an accounting, because the record indicates that there are still outstanding disputes over these claims – Defendants are still trying to sell the Medford Property, and there may still be documents relevant to an accounting that were not disclosed during the course of discovery.

**V.  CONCLUSION**

An accompanying Order will be entered.

**March 27, 2017**                              **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  Chief U.S. District Judge

21